UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LOREN ROBINSON,

        Petitioner,                    Case No. 2:14-cv-50

v.                                 HON. R. ALLAN EDGAR

JEFFREY WOODS,

        Respondent.

_____/

## MEMORANDUM AND ORDER

Petitioner Loren Troueze Robinson filed this petition for writ of habeas corpus challenging his convictions for extortion, delivery of a controlled substance of less than 50 grams, second offense (crack cocaine), unlawful imprisonment, and aggravated assault. Petitioner was sentenced to concurrent prison terms of 150 to 360 for the extortion conviction, 38 to 480 months for the delivery of a controlled substance conviction, 120 to 270 months for the false imprisonment conviction, and 365 days for the aggravated assault conviction.

Petitioner alleges that:

I. Petitioner's convictions should be overturned because there was insufficient credible evidence at trial to prove Petitioner guilty of the crime.

II. The trial court denied Petitioner a fair trial and his due process rights by denying the motion to file a late notice of alibi and his motion for a new trial.

III. Petitioner's sentences were invalid because they were based on inaccurate information, i.e., improper scoring of the legislatively

imposed sentencing guidelines, use of an incorrect burden of proof, and insufficient facts, thereby violating his due process rights.

IV.  Correctly scoring the guidelines would require resentencing.

V.  Petitioner was denied his right to due process of law under the federal and state constitutions where he was never arraigned on the charges in the felony information brought against him and he did not waive his right to an arraignment.

VI.  The trial court violated Petitioner's due process rights by refusing to appoint substitute counsel where a conflict developed over fundamental trial tactics and defense trial counsel failed to subpoena exculpatory witnesses despite repeated demand.

VII.  Petitioner was denied his state and federal constitutional rights to due process and a fair trial where he was shackled.

VIII.  Petitioner was denied a fair trial through the prosecution's withholding of crucial evidence with respect to the full extent of the plea deal offered to Petitioner's co-defendant in exchange for testimony against Petitioner at trial.

IX.  Due process requires vacating the trial court's assessment for court costs, fees, and restitution where the trial court failed to consider Petitioner's indigency and ability to pay during his incarceration.

X.  The trial court's order to remit prisoner funds for fines, costs, and assessments is in clear error and must be corrected where it inaccurately indicates that Petitioner owes a balance greater than what was actually ordered by the court.

XI.  Petitioner was denied his state and federal constitutional rights to effective assistance of trial counsel where counsel failed to (1) insure that Petitioner was informed of the nature of the charges brought against him in the information; (2) move for a mistrial after it came to his attention that jurors might be aware that Petitioner was shackled; (3) investigate the specifics of the plea deal the prosecutor offered to Petitioner's co-defendant in exchange for his testimony; and (4) object to Petitioner's ability to pay restitution and court costs during the period of Petitioner's incarceration due to his indigency.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court

2

must follow the standard of review established in that statute.  Under the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

3

incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that his convictions should be overturned because there was insufficient credible evidence at trial to prove Petitioner's guilt. On appeal, the Michigan Court of Appeals rejected Petitioner's claim stating:

> Defendant argues that his convictions were not supported by sufficient evidence. We review de novo challenges to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt. *Id.*

4

Most of the defendant's argument is an attempt to reargue the credibility of the witnesses. Defendant claims that the victim, Joshua Karamalegos, was not a credible witness for numerous reasons, including that he lied to the police. Defendant also claims that Victor Sawyer, a codefendant, was not credible because Sawyer received a plea agreement and that his own testimony, because it was supported by the testimony of two witnesses, was credible. The credibility of the witnesses was a question for the jury, *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009), and we will not interfere with the jury's role in determining the credibility of the witnesses, *People v. Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Accordingly, we reject defendant's attempts to reargue witness credibility.

Defendant claims that his convictions for extortion and unlawful imprisonment were not supported by sufficient evidence because there was no threat of harm against Joshua if he did not pay the $1,000, his drug debt, to defendant. The crime of extortion requires the malicious communication of a threat, made with the intent to extort money or to obtain a pecuniary advantage, to injure a person or a person's property. MCL 750.213; *People v Fobb*, 145 Mich App 786, 790; 378 NW2d 600 (1985). The elements of unlawful imprisonment, as relevant to the present case, include the restraint of a person to facilitate the commission of another offense. *People v Railer*, 288 Mich App 213, 217; 792 NW2d 776 (2010). Joshua testified that, after he became persistent that he could not get the money unless he went back to Niles, Vincent Wiggins, codefendant, hit Joshua in the head and that, at some time, defendant told Joshua that he was not leaving until he paid the money. Then, as instructed, during one of the telephone calls with his father, Themelis (Tim) Karamalegos, Joshua told Tim that Tim would not see him again if he did not get the money. Defendant did not release Joshua until Tim exchanged the money. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that a malicious threat was made to injure Joshua if $1,000 was not paid to defendant. *Cline*, 276 Mich App at 642.

Defendant also claims that his conviction for aggravated assault was not supported by sufficient evidence because there was no proof of a serious injury. The elements of aggravated assault include the infliction of serious or aggravated injury. MCL 759.81a(1). "A serious or aggravated injury is a physical injury that requires immediate medical treatment or that causes disfigurement, impairment of health, or impairment of a part of the body." CJI2d 17.6(4). Joshua testified that he blacked out each time Wiggins hit him. Joshua also

5

testified that, when he learned he was being arrested after cocaine was found in his pants pocket, he refused a ride in an ambulance to the hospital and asked to be taken to jail. The jail nurse stated that Joshua had to go to the emergency room. The emergency room doctor testified that Joshua suffered a mild concussion and sustained multiple abrasions and contusions on his face. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Joshua suffered a serious or aggravated injury. *Cline*, Mich App at 642.

Michigan Court of Appeals Opinion, PageID.23-24, ECF No. 1.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* Petitioner's arguments presented to the Michigan Court of Appeals show that he is chiefly challenging the credibility of those witnesses who testified against him. PageID.1019-1024, ECF No. 14-9. However, federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). *See also McPherson v. Woods*, 506 F. App'x 379, 388-89 (6th Cir. 2012).

Petitioner claims that, regarding his conviction for extortion and unlawful imprisonment, "[t]here was no testimony that anyone told him that he would be hurt, etc., if he didn't pay [the $1,000]." PageID.1024, ECF No. 14-9. However, the victim testified that Petitioner told the victim that "you will not be leaving this house until I have my money." PageID.423, ECF No. 14-4. Accordingly, the victim told his father over the phone: "I will not - - you won't see me anymore if I don't get the money." *Id.* The victim also testified that his three captors, including Petitioner, "told me to tell [my father] about the $1000, otherwise, he wouldn't see me again." PageID.425, ECF No. 14-4. The victim's father testified that, when his son was calling, he heard voices in the

6

background, "people instructing him to say things." PageID.491, ECF No.14-4.  He also testified that

he decided to "do something" and give the $1,000 to him when the victim told him "that I would

never see him again, from the position that he was in, that I would never see him again." PageID.492,

ECF No. 14-4.  Viewing this evidence in the light most favorable to the prosecution, it is clear that

the evidence was sufficient for a rational trier of fact to establish that Petitioner committed the crimes

of extortion and unlawful imprisonment under Michigan law.

 Petitioner claims that there was insufficient evidence for the aggravated assault charge

"because there is no proof of serious injury." PageID.1024, ECF No. 14-9.  The victim testified that,

after he had been taken to jail because police found cocaine on him, a nurse at the jail stated that

"[h]e's got to go to the emergency room . . . he's pretty banged up." PageID.437, ECF No. 14-4.  The

victim's emergency room physician testified at trial that the victim had suffered "a mild concussion,

because of the mental status changes that were associated with his injuries.  And that he had multiple

abrasions and contusions on the face." PageID.480, ECF No. 14-4.  Viewing this evidence most

favorable to the prosecution, it is clear that the evidence was sufficient to establish for a rational trier

of fact that the victim suffered serious or aggravated injury.  The Michigan Court of Appeals decision,

therefore, was not contrary to, or involved an unreasonable application of, clearly established federal

law as determined by the Supreme Court of the United States; or did not result in a decision that was

based upon an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.

 Petitioner claims that the trial court denied him a fair trial and violated his due process

rights by denying the motions to file a late notice of alibi and his motion for a new trial based on

ineffective counsel.  On appeal, the Michigan Court of Appeals rejected Petitioner's claim regarding

the late filing of an alibi notice, stating:

Defendant argues that the trial court erred when it denied his request to file a notice of alibi on the second day of trial. We review the trial court's decision whether to permit a defendant to introduce alibi evidence when the defendant failed to comply with the notice-of-alibi statute, MCL 768.20(1), for an abuse of discretion. *People v Travis*, 443 Mich 668, 679-680; 505 NW2d 563 (1993). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

A defendant, if he wants to present an alibi defense, is required to file notice of the alibi at least ten days before trial. MCL 768.20(1). Defendant did not request to file a notice of alibi until the second day of trial. We conclude that the trial court did not abuse its discretion in denying defendant's request to file a late notice of alibi. *Travis*, 443 Mich at 679-680. The late notice resulted in prejudice to the prosecutor. The prosecutor did not have time to have the alibi witness interviewed or investigated or to find rebuttal alibi witnesses. The trial court accepted defense counsel's assertion that he did not learn of a potential alibi defense until January 20, 2011, when he reviewed defendant's January 13, 2011, letter. Defense counsel had represented defendant since the preliminary examination in September 2010, and no reason was provided for defendant's late disclosure of alibi witnesses. Further, defense counsel deemed it unwise to present an alibi defense. Not only was he concerned about the subornation of perjury, but he also did not believe that an alibi defense was a good strategic approach. Under these circumstances, the trial court's decision to deny defendant's request to file a late notice of alibi fell within the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217.

Defendant focuses his argument on defense counsel's statement to the trial court that presenting the alibi witnesses raised an ethical dilemma regarding the subornation of perjury. According to the defendant, defense counsel's statement was improper because counsel essentially told the trial court that he did not believe defendant. However, because defendant presents no legal authority in support of the claim that defense counsel made an improper statement, the argument is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Regardless, the argument does not address whether the trial court, after hearing from defense counsel, defendant, and the prosecutor, abused its discretion in denying defendant's request to file a late notice of alibi.

Michigan Court of Appeals Opinion, PageID.24-25, ECF No. 1 (footnote omitted).

The Supreme Court affirmed that a defendant's "right to present his own witnesses to establish a defense . . . is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, the Court has also outlined the proper limitations of this right:

> A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. . . . A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. . . . As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.

*United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations, quotation marks, and footnote omitted). *See also Taylor v. Illinois*, 484 U.S. 400, 411 (1988) ("The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.").

In particular, the Supreme Court upheld a state's notice-of-alibi rule as constitutional where that rule was found to be "carefully hedged with reciprocal duties requiring state disclosure to the defendant. Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida*, 399 U.S. 78, 81 (1970). *See also Wardius v. Oregon*, 412 U.S. 470, 472 (1973) (holding enforcement of alibi rules unconstitutional "unless reciprocal discovery rights are given to criminal defendants"). Judges applying these rules are given "wide latitude to exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986) (quotations omitted).

The applicable Michigan statute, Mich. Comp. Laws § 768.20, provides not only discovery rights to a defendant; it also requires that a defendant "file and serve upon the prosecuting

attorney a notice in writing of his intention to claim that defense" "no less than 10 days before the trial of the case." Mich Comp. Laws § 768.20(1). An exception to this rule is the "showing by the moving party that the name of an additional witness was not available when the notice required by subsection (1) . . . was filed and could not have been available by the exercise of due diligence, the additional witness may be called." *Id.* 768.20(3).

Petitioner did not comply with this rule or the exception when he requested to file a notice on the second day of trial for three alibi witnesses. That included Petitioner's parents and girlfriend. PageID.519-520, ECF 14-4. The Petitioner's motion, accepting counsel's assertion that he only learned of these alibi witnesses less than a week before trial and taking into account counsel's reluctance to use these witnesses out of concerns about perjury and trial tactics. PageID.533-534, ECF 14-4.

Defense counsel's concerns about perjury and trial tactics were validated at Petitioner's *Ginther* hearing in May 2012. At that hearing, Petitioner's alibi witnesses, his mother, father, and girlfriend, contradicted Petitioner's own testimony about his whereabouts during the time of the crimes. Petitioner's parents and girlfriend claimed under oath that Petitioner was locked up at their house after his 9 PM curfew on the night of the crime. PageID.838, 853, 855, 859, 866. ECF No. 14-8. However, Petitioner claimed in his trial testimony that after spending some time with his uncle at the place of the crime, at the time of the crime, he first got home "[p]robably around like 11, 12, something like that." PageID.696-698, ECF No. 14-5. His uncle's trial testimony also placed him there past his alleged curfew. PageID.665-666, ECF No. 14-5. At his *Ginther* hearing, Petitioner admitted that his parents' sworn testimony was false. PageID.901-902, ECF No. 14-8.

Petitioner argues that alibi witnesses would have provided his defense. PageID.1028, ECF No. 14-9. However, given the contradictory evidence presented at the *Ginther* hearing validating

10

trial counsel's concerns, Petitioner failed to produce any credible evidence demonstrating that the three alibi witness he intended to call at trial would have provided exculpatory testimony.  The Michigan Court of Appeals decision, therefore, was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Michigan Court of Appeals also rejected Petitioner's claim regarding his motion for a new trial based on ineffective counsel stating:

> Defendant argues that the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel.  We review the trial court's decision on a motion for a new trial for an abuse of discretion.  *People v Kevorkian*, 248 Mich App 373, 410; 639 NW2d 291 (2001).  However, the determination whether a defendant was denied the effective assistance of counsel is a mixed question of fact and constitutional law.  *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).  A trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's right to effective assistance.  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  We review a trial court's findings of fact for clear error, but review de novo questions of constitutional law.  *Id.*

> "Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise."  *People v Noble*, 238 Mich App 647, 661-662; 608 NW2d 123 (1999).  To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different.  *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008).

> First, the defendant claims that defense counsel was ineffective for not investigating his alibi defense, filing a notice of alibi, and calling the alibi witness at trial.  Defendant relies on his and his mother's testimony at the *Ginther* hearing that counsel was told of the alibi witnesses before January 2011.  However, the trial court did not believe defendant and his mother.  Rather, it found defense counsel,

11

and his version of defendant's assertion of this alibi defense, credible. It found that no alibi witness ever told defense counsel that defendant was with him or her on March 6 or 7, 2010, and that the alibi defense was not established until less than a week before trial. We must defer to the credibility determination of the trial court, which had a superior opportunity to judge the credibility of the witnesses. MCR 2.613(C); *Peope v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). Defendant makes no argument that the trial court, after having found defense counsel credible, still erred in determining that counsel was not ineffective for failing to develop an alibi defense. Accordingly, defendant's claim that defense counsel was ineffective for failing to investigate and present an alibi defense is without merit. Defendant has not shown that his counsel's performance fell below an objective standard of reasonableness. *Uphaus (On Remand)*, 278 Mich App at 185.

Second, defendant claims that defense counsel was ineffective for failing to investigate the criminal backgrounds of Marcus Hughes and [Victor] Sawyer. According to defendant, Hughes and Sawyer could have been impeached with prior criminal convictions. However, not all convictions may be used to impeach a witness. Only convictions for crimes that contain an element of dishonesty or false statement or contain, in part, an element of theft may be used to impeach a witness. MRE 609(a). Defendant presented no evidence at the *Ginther* hearing that either Hughes or Sawyer had a conviction that could have been used to impeach him. Accordingly, defendant has not established the factual predicate of the claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Third, defendant claims that defense counsel was ineffective for failing to impeach Joshua with statements that he had made to the police. However, defendant has not identified any statements in police reports that defense counsel failed to use to impeach Joshua. Accordingly, defendant has not shown that defense counsel's cross-examination of Joshua fell below objective standards of reasonableness. *Uphaus (On Remand)*, 278 Mich App at 185.

Fourth, defendant claims that defense counsel was ineffective for failing to alert the trial court to his learning disability and other problems at sentencing. However, through the presentencing and investigation report (PSIR) and from defense counsel's statements, the trial court learned that defendant has a learning disability and a very difficult time reading and writing and that, when he was in high school, defendant attended special education classes. Defendant does not identify any additional statements defense counsel should have

made. Accordingly, defendant has not shown that defense counsel's performance at sentencing fell below objective standards of reasonableness. *Id.*

Fifth, defendant argues that defense counsel was ineffective for failing to obtain telephone records for the telephone number that called Tim's telephone. At trial, Detective Wesley Smigielski testified that the telephone number belonged to a "Boost phone" and, because there was no contract for the telephone, there were no records for it. Because no records existed for the telephone number, defense counsel's performance in failing to obtain the records did not fall below objective standards of reasonableness. *Id.*

Sixth, defendant argues that defense counsel was ineffective for failing to obtain surveillance video from Wal-Mart. However, defendant did not present any evidence at the *Ginther* hearing to suggest that surveillance video from March 7, 2010, was still in existence at the time he was arrested, which was five months after the criminal offenses occurred. Defendant, therefore, has not established the factual predicate of his claim. *Hoag*, 460 Mich at 6.

The trial court did not abuse its discretion in denying defendant's motion for a new trial. *Kevorkian*, 248 Mich App at 410. The ineffective assistance of counsel claims that defendant raised in the motion are without merit.

Michigan Court of Appeals Opinion, PageID.25-27, ECF No. 1 (footnote omitted)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Petitioner raises again his alibi defense under his ineffective defense claim: During his *Ginther* hearing, Petitioner claimed that he "told his attorney about alibi witnesses in sufficient time so there could and should have been an alibi defense."  PageID.1032, ECF No. 14-9.  *See* PageID.881-882, 890-891, ECF No. 14-8.  However, the judge presiding at that hearing did not find this claim credible, holding instead that Petitioner's credibility "is clearly compromised and suspect" and that, before or during trial, Petitioner's alibi witnesses "NEVER told [counsel] that the Defendant was with them at the time of the offense."  PageID.988, ECF No. 14-9.  Additionally, the judge held that "the result would have been disastrous," if trial counsel had raised the alibi defense demanded by Petitioner at trial.  *Id.*  Accordingly, the judge did not find counsel's assistance deficient under

*Strickland*.  Moreover, given that "[t]he evidence against Defendant was overwhelming" at trial, the judge also did not find counsel's performance prejudicial.  PageID.989, ECF No. 14-9.

Petitioner also raises counsel's alleged failure to investigate the criminal background of two of the witnesses that testified against Petitioner and use that background to impeach them at trial.  PageID.1033, ECF No. 14-9.  However, Petitioner failed to show that these two witnesses had committed any impeacheable offenses under MRE 609.  Petitioner also raises counsel's alleged failure to impeach the victim by using statements allegedly made by the victim "in different police reports."  PageID.1033, ECF 14-9.  However, Petitioner provides no evidence concerning the contents of these statements; he also fails to demonstrate that the victim ever actually made those impeaching statements to the police.  Petitioner also claims that counsel was ineffective for not raising Petitioner's "learning disability and . . . other problems" at sentencing.  *Id.*  However, the record of the sentencing hearing shows that counsel raised as an attenuating circumstance that Petitioner "has a learning disability and has difficulty reading and writing."  PageID.794, ECF No. 14-6.  Petitioner has not demonstrated what else counsel could have done to raise this issue more effectively.

Petitioner also claims that counsel was ineffective for not obtaining the phone records of the phone used to make the critical phone calls to the victim's father.  PageID.1033, ECF No. 14-9.  However, the investigating detective testified at trial that, while the voice mail on that phone identified Petitioner as its owner, the detective was not able to obtain any phone records because it was a "Boost phone" without a contract.  PageID.598-599, ECF No. 14-4.  Petitioner has not shown that there was a record for the phone in question and that this record would have been exculpatory.  Petitioner finally claims that counsel was ineffective for not obtaining a certain piece of surveillance footage deemed critical by Petitioner.  At the *Ginther* hearing, trial counsel not only addressed his tactical decision not to use the footage; he also testified that, based on a police report, he was led to

15

believe that the footage "did not exist by the time it became a subject."  PageID.926-927, ECF No. 14-8.  Petitioner has not provided any evidence demonstrating that this tape existed and that it would have been exculpatory.  The Michigan Court of Appeals decision, therefore, was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that his sentences were invalid because they were based on improper scoring of the legislatively imposed sentencing guidelines, use of an incorrect burden of proof, and insufficient facts.  He furthermore claims that scoring the guidelines correctly would require resentencing.  Afer reviewing Petitioner's sentencing claims in great detail, the Michigan Court of Appeals rejected Petitioner's claims, concluding:

> Because the trial court did not abuse its discretion in scoring any of the offense variables for defendant's conviction for extortion, we affirm defendant's sentences for extortion and unlawful imprisonment.  We also affirm defendant's sentence for delivery of a controlled substance less than 50 grams without even determining whether the trial court erred in scoring the relevant offense variables . . . for this specific conviction.  See *Eller v Metro Indus Contracting, Inc*, 261 Mich App 569, 571; 683 NW2d 242 (2004) (stating that an issue is moot and should not be reached if a court cannot fashion a remedy). Defendant's minimum sentence for delivery of a controlled substance is 38 months, which is far shorter than defendant's minimum sentence of 150 months for extortion.  Even if we were to vacate defendant's sentence for delivery of a controlled substance and remand for resentencing, defendant would not be granted any practical relief. Regardless whether defendant's sentence is 38 months or any shorter length, defendant is required, based on his sentence for extortion, to serve a minimum of 150 months' imprisonment.

Michigan Court of Appeals Opinion, PageID.31, ECF No. 1.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-

16

74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law.  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord  Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)).  *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).

The Supreme Court has also held that, to meet constitutional standards of due process, "[o]ther than  the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (1999).  In *Blakely v. Washington*, 542 U.S. 296, 303 (2004), the Supreme Court explained that " that the 'statutory maximum' for *Apprendi* purposes is

the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." While the Court is, thus, concerned about exceeding the statutory maximum by facts not proven to a jury beyond a reasonable doubt, it does not recognize a constitutional right requiring the same burden of proof for a sentence that does not exceed this limit. *Harris v. United States*, 536 U.S. 545, 566 (2002).[1]

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485. Furthermore, Petitioner's sentences do not exceed the statutory maximum. Instead, Petitioner argues only that the court's sentencing was not sufficiently supported by facts proved to a jury beyond a reasonable doubt but was based, instead, on "judicial fact-finding." PageID.1038, ECF 14-9. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. The state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.

Petitioner claims that he was denied his federal and state due process rights because he was not arraigned on the charges in the felony information brought against him and did not waive his right to an arraignment. The Michigan Court of Appeals reviewed and rejected Petitioner's claim stating:

> In his pro per brief, defendant argues that he was denied due process of law because he was not arraigned on the charges in the information and he did not waive arraignment. Because this claim of error was not raised before the trial court, it is unpreserved for appellate review. *People v Matamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved claims of error for plain

---

[1] The Court is aware that *Harris* has been overruled by the Supreme Court in *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). However, since Petitioner was sentenced in 2011, *Harris* still controls this sentence. *See In re Mazzio*, 756 F.3d 487, 491 (6th Cir.2014) (holding that "*Alleyne* does not apply retroactively to cases on collateral review") and *Floyd v. Palmer*, No. 13-10050, 2015 WL 4877423, at *8-9 (E.D. Mich. Aug. 14, 2015).

error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The purpose of an arraignment is to provide the defendant with formal notice of the charges against him. *People v Waclawski*, 286 Mich App 634, 706; 780 NW2d 321 (2009). At arraignment on the information, the "court must either state to the defendant the substance of the charge contained in the information or require the information to be read to the defendant." MCR 6.113(B). However, a defendant may not be entitled to be arraigned on the information. MCR 6.113(E) provides that "[a] circuit court may submit to the State Court Administrator pursuant to MCR 8.112(B) a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to give the defendant a copy of the information." In December 2007, the Berrien Circuit Court issued Administrative Order 2007-05, which states that "[i]n all cases where the defendant is represented by an attorney, the Court need not conduct an arraignment on the information." Accordingly, because defendant was represented by an attorney, his right to be arraigned on the information was eliminated. This was no plain error. *Carines*, 460 Mich at 763.

In addition, defendant's claim that he never received notice of the charges against him before trial commenced is contradicted by the lower court record. Defendant was arraigned on the complaint and warrant and had a preliminary examination. At the conclusion of the preliminary examination, after it bound defendant over for trial, the court stated, "I have a not guilty plea entered without formal arraignment; that is entered at this time, along with a jury demand." Defendant, on the day of the preliminary examination, signed a document captioned "Defendant's entry of plea of not guilty without arraignment (M.C.R. 6.113)." By signing the document, defendant agreed, in part, that he had received and read a copy of the complaint, warrant, or information; understood the substance of the charges against him; waived arraignment in open court; pleaded not guilty; and demanded a jury trial. Defendant knew of the charges against him before trial commenced.

Michigan Court of Appeals Opinion, PageID.31-32, ECF No. 1.

The Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI; *see Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999). However, it does not require the specific

procedure of arraignment as long as a defendant's right to notice is satisfied by other means. *Redwine v. Renico*, No. Civ. 01–CV–74802–DT, 2002 WL 31245256, at *3 (E.D. Mich. Sept. 30, 2002).

Petitioner claims that the trial court record does not show that he "had notice of the charges in this matter prior to the commencement of his jury trial," although he admits that "the record indicates that Defendant was arraigned on a 'complaint and warrant' in the district court." PageID.1080-1081, ECF No. 14-9. *See* PageID.179, ECF 14-1 (Petitioner's Berrien County Docket Sheet recording "DEFENDANT IN COURT . . . DEFNDT ADV OF CONTENT OF C&W"). Petitioner, furthermore, admits in ¶ 5 of his Affidavit that "[a]t the conclusion of the preliminary examination I was told by the Court and my attorney that I was being bound over for trial on the charges in the complaint and warrant." PageID.1162, ECF No. 14-9. *See* PageID.180, ECF No. 14-1 (recording "PRELIMINARY EXAM HELD AS TO COUT 1, 2, 3, 4 . . . DEFN W/ATTY IN COURT").

Moreover, as the Michigan Court of Appeals noted, Petitioner, on the day of his preliminary examination, signed a document captioned "Defendant's entry of plea of not guilty without arraignment (M.C.R. 6.113)." *See* Page.ID.180, ECF No. 14-1 (recording "DEFN ENTRY PLEA N/GUILTY"). The trial judge referred to the contents of this document at the end of Petitioner's preliminary examination. PageID.222, ECF No. 14-2. Therefore, Petitioner was aware of the charges against him well before his trial. The the state appellate court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.

Petitioner claims that the trial court violated his due process rights by refusing to appoint substitute counsel where a conflict developed over fundamental trial tactics and defense trial

counsel failed to subpoena exculpatory witnesses despite repeated demand.  The Michigan Court of

Appeals reviewed and rejected Petitioner's claims stating:

> Next, defendant argues that the trial court erred in denying his request for substitute counsel.  "The decision regarding substitution of counsel is within the sound discretion of the trial court and will not be upset on appeal absent a showing of an abuse of that discretion."  *People v Jesse Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).
>
> Defendant claims that he requested substitute counsel after he and defense counsel disagreed about trial strategy.  He wanted to pursue an alibi defense, but defense counsel refused to investigate and pursue the defense.  However, in his November 2010 letter to the trial court, defendant did not indicate that he wanted a new attorney because he and defense counsel disagreed about an alibi defense.  Rather, defendant told the trial court that he did not feel comfortable with defense counsel as his attorney because he smelled alcohol on defense counsel's breath and because he had not heard from defense counsel after he had told defense counsel that he had new evidence and new witnesses, whom he had not previously been able to contact because they had been out of town, and had requested that counsel file a "motion to discover."
>
> Based on the record, especially the testimony at the *Ginther* hearing, it would be unreasonable for us to conclude that the new witnesses referenced in defendant's letter were the alibi witnesses.  At the *Ginther* hearing, defendant testified that he told defense counsel about his alibi witnesses every time that counsel came to see him.  There is no indication that the alibi witnesses were ever out of town or that defendant had not been able to contact them.  Defendant's mother and his girlfriend had been in contact with defendant while he was at jail.  In addition, a conclusion that the "new witnesses" referenced in defendant's letter were not the alibi witnesses is consistent with the trial court's factual findings at the conclusion of the *Ginther* hearing.  The trial court found that defendant had not informed defense counsel of an alibi defense until shortly before trial.
>
> Accordingly, defendant has failed to establish that the trial court abused its discretion in denying his request for substitute counsel.  *Mack*, 190 Mich App at 14.  The trial court's decision not to appoint substitute counsel based on a disagreement of which it was never apprised did not fall outside the range of reasonable and principled outcomes.  *Unger*, 278 Mich App at 217.

Michigan Court of Appeals Opinion, PageID.32-33, ECF No. 1.

The Sixth Amendment guarantees the right to assistance of counsel in criminal proceedings to ensure that the criminal defendant receives a fair trial. *Wheat v. United States*, 486 U.S. 153, 158-159 (1988). The inquiry focuses on the adversarial relationship and whether the defendant is represented by an effective advocate, as opposed to the defendant's personal relationship with his lawyer. *Id.*, *Morris v. Slappy*, 461 U.S. 1 (1983). Moreover, an indigent defendant must show "good cause" to warrant substitution of his appointed counsel. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).

Petitioner has failed to show that he was represented by an ineffective advocate. Petitioner asserts that counsel was ineffective for failing to present the alibi defense and that Petitioner had requested substitute counsel in a November 2010 letter to the court. PageID.1086, ECF No. 14-9. However, as the Michigan Court of Appeals noted: Petitioner's letter to the court requesting substitute counsel was not about irreconcilable conflicts regarding trial strategy, but was mainly based on Petitioner's not feeling comfortable with defense counsel. Thus, Petitioner has failed to show good cause warranting substitution of his appointed counsel. He also failed to establish that the trial court was aware of any substantive conflicts between him and trial counsel. The Michigan Court of Appeals' decision rejecting Petitioner's claim is supported by clearly established federal law and based on a reasonable application of the facts.

Petitioner claims that he was denied state and federal constitutional due-process and fair-trial rights when he was shackled during trial. The Michigan Court of Appeals considered and rejected Petitioner's claims stating:

> Defendant also argues that the trial court erred when it ordered that he
> be shackled during trial. We review a trial court's decision to restrain

a defendant for an abuse of discretion. *People v Dixon*, 217 Mich App 400, 404-405; 552 NW2d 663 (1996).

The right to a trial includes, absent extraordinary circumstances, the right to be free from shackles in the courtroom. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). A defendant may only be shackled on a finding, supported by record evidence, that shackling is necessary to prevent escape or injury to persons in the courtroom or to maintain order. *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994). Even if a trial court abuses its discretion when it orders that a defendant be shackled, the defendant, to be entitled to relief, must show that he suffered prejudice. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). "[A] defendant is not prejudiced if the jury was unable to see the shackles on the defendant." *Id.*

We conclude that the trial court did not abuse its discretion in ordering that defendant be shackled during trial. *Dixon*, 217 Mich App at 404-405. The trial court ordered that defendant be shackled only after it found that defendant was a flight risk after conducting an evidentiary hearing. As shown by defendant's jail records, defendant had attempted to place himself in situations where an escape could be possible, such as a hospital or a jail cell with exterior windows. Defendant's manipulation attempts, along with defendant's history of not appearing for court, his anger when learning that no one would help him post bond, and his uncooperative behavior toward officers in jail, support the trial court's finding that defendant was a flight risk. The trial court's order that defendant be shackled was not based merely on the preference of a law enforcement officer. See *People v Banks*, 249 Mich App 247, 257-258; 642 NW2d 351 (2002). Accordingly, the trial court's decision that defendant be shackled during trial did not fall outside the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217.

Michigan Court of Appeals Opinion, PageID.33, ECF No. 1.

The Supreme Court has rejected the routine use of shackles because "the Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible to the jury* absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest *specific to a particular trial*. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." *Deck*

23

*v. Missouri*, 544 U.S. 622, 629 (2005) (emphasis added); *See Lakin v. Stine*, 431 F.3d 959, 963 (6th Cir. 2005).

To determine the appropriateness of shackling decisions, the Sixth Circuit considers the following four factors: "(1) the defendant's record, his temperament, and the desperateness of his situation; (2) the state of both the courtroom and the courthouse; (3) the defendant's physical condition; and (4) whether there is a less prejudicial but adequate means of providing security." *Larkin*, 431 F.3d at 964. The nature of the charges against a defendant cannot, by itself, justify shackling. *Id.* at 964-65.

Petitioner failed to demonstrate that the jurors actually saw the shackles he was wearing during trial. The court expressly addressed this issue following the evidentiary hearing to determine the need for shackles and asked Petitioner to be "cooperative in that you not be jangling any chains or shackles around to upset what we're trying to prevent [the jury becoming aware that Petitioner was shackled.]" PageID.254, ECF No. 14-3. Furthermore, this evidentiary hearing was held in the absence of potential jurors. PageID.226, ECF No. 14-3.

During the hearing, the trial court heard testimony concerning Petitioner's apprehension and uncooperative, manipulative conduct in prison. It also considered Petitioner's prior uncooperative conduct in failing to show up in court while released on bond as well as the lower security available in the courthouse, concluding that "[u]nder the totality of circumstances, the court is satisfied that the defendant is an escape risk." It therefore granted the prosecution's motion to keep Petitioner shackled during trial. PageID.252-254, ECF No. 14-3. Petitioner's contention that the court's findings were not "reasonable" is not supported by the record before this Court. The record shows that the trial court evaluated the need for shackles based on considerations consistent with the above-mentioned factors used by the Sixth Circuit. Therefore, the appellate court's rejection of

24

Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.

Petitioner claims that he was denied a fair trial through the prosecution's withholding of crucial evidence with respect to the full extent of the plea deal offered to Petitioner's codefendant in exchange for testimony against Petitioner at trial. The Michigan Court of Appeals considered and rejected Petitioner's claim stating:

> Defendant argues that the prosecutor violated *Maryland v Brady*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), when she failed to disclose that Sawyer's plea agreement included the dismissal of drug charges in an unrelated case. This claim of prosecutorial misconduct is unpreserved because it was not raised before the trial court. See *Metamora Water Serv, Inc*, 276 Mich App at 382. We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).
>
> Pursuant to Brady, a defendant has a due process right to obtain evidence that is in the possession of the prosecution if the evidence is favorable to the accused and material to guilt or punishment. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). In claiming that Sawyer's plea agreement included the dismissal of drug charges in an unrelated case, defendant relies on defense counsel's testimony from the *Ginther* hearing. However, defense counsel's testimony was ambiguous whether Sawyer's plea agreement included the dismissal of an unrelated drug charge. Although counsel seemed to believe that a drug charge against Sawyer in an unrelated case was dismissed, he could not recall whether the dismissal was related to Sawyer's plea agreement. Accordingly, defense counsel's testimony does not establish that Sawyer's plea agreement included the dismissal of a drug in an unrelated case.[7] Accordingly, there was no prosecutorial misconduct constituting plain error. *Ackerman*, 257 Mich App at 448.

> _____
>
> [7] In addition, even if the dismissal of a drug charge was part of Sawyer's plea agreement, because defense counsel's testimony indicates that counsel knew of the dismissal, the testimony does not establish that the prosecutor suppressed evidence of the dismissal. See *People v Lester*, 232 Mich App 262, 282; 591 NW2d 267 (1998).

Michigan Court of Appeals Opinion, PageID.33-34, ECF No. 1.

It is a violation of due process of law when the prosecution suppresses "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence includes evidence impeaching a witness. *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Favorable evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

Petitioner, claims that the Prosecution failed to disclose "the full scope of its deal with Mr. Sawyer to the defense" because there is "nothing in the record indicating that the prosecution disclosed" this deal fully. PageID.1101, ECF No. 14-9. Petitioner claims that Mr. Sawyer, the witness in question, was not only given a plea deal regarding his involvement in the events leading to Petitioner's conviction – the witness testified about this deal during Petitioner's trial, PageID.578-579, ECF No. 14-4 – but that he also made another deal with the government to get "drug charges in an unrelated case dismissed in exchange for his testimony against [Petitioner] at trial." PageID.1100, ECF No. 14-9.

Petitioner bases this claim on (a) what Petitioner allegedly learned "shortly after arriving in prison" and (b) trial counsel's testimony during Petitioner's *Ginther* hearing. PageID.1100-1101, ECF No. 14-9. However, the record of Petitioner's *Ginther* hearing shows that, at best, trial counsel's statements do not corroborate Petitioner's claim that there was "another deal" with Sawyer. When Petitioner's appellate counsel erroneously asked Petitioner's trial counsel about whether "Mr. Hughes" was "involved in getting a plea bargain in another case," trial counsel stated: "That part, I don't recall. I know he did not get charged in this case." Petitioner's appellate counsel then corrected himself, "Victor Sawyer's plea bargain's what I'm talking about," and asked trial counsel: "Do you remember what the plea bargain was?" Trial counsel answered: "Not without looking at the transcripts, no." After looking at the trial transcript, trial counsel admitted to the prosecutor that "the jury was able to hear" that there "was a plea agreement, in fact, with Victor Sawyer." PageID.934-936, ECF No. 14-8. The issue of "another deal" for Sawyer did not come up again at that hearing.

Therefore, Petitioner fails to show that there was impeaching evidence that the prosecution should have disclosed to the defense. Further, Petitioner fails to show that this evidence

was favorable or material to his case. Therefore, the appellate court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.

Petitioner claims that due process requires vacating the trial court's assessment for court costs, fees, and restitution where the trial court failed to consider Petitioner's indigency and ability to pay. The Michigan Court of Appeals has considered and rejected Petitioner's claims stating:

> Because defendant did not object when the trial court ordered him to pay the fees, costs, and restitution, the claim of error is unpreserved, see *People v Dunbar*, 264 Mich App 240, 251; 690 NW2d 476 (2004), overruled on other grounds *People v Jackson*, 483 Mich 271; 769 NW2d 630 (2009), and we review it for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

> Defendant's reliance on *Dunbar*, 264 Mich App at 254-255, where this Court held that a trial court must consider a defendant's ability to pay before it orders the defendant to pay the costs of his court-appointed attorney, is misplaced. The Supreme Court overruled *Dunbar* in *Jackson*, 483 Mich 271. In *Jackson*, the Supreme Court held that a defendant does not have a constitutional right to an assessment of his ability to pay before a fee for his court-appointed attorney is imposed. *Id.* at 290. According to the Supreme Court, a defendant is entitled to an ability-to-pay assessment, but the trial court need not conduct an assessment of a defendant's ability to pay until the imposition of the fee is enforced and the defendant objects to the enforcement. *Id.* at 292-293. Because defendant relies on Dunbar, he has failed to establish plain error. *Carines*, 460 Mich at 763.

Michigan Court of Appeals Opinion, PageID.34, ECF No. 1.

The purpose of federal habeas corpus proceedings is to obtain release from confinement "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's claims regarding court costs, fees, and restitution do not challenge his confinement. Therefore, Petitioner is not entitled to habeas relief on the basis of this claim. *See Fisher v. Booker*, No. 03-10029-BC, 2006 WL 2420229, at *9 (E.D. Mich. Aug. 22, 2006); *See also*

*United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995). Petitioner claims that the trial court's order to remit prisoner funds for fines, costs, and assessments is in clear error. The Michigan Court of Appeals agreed with Petitioner and remanded for correction. PageID.34, ECF No. 1. Like Petitioner's previous claim, this claim is non-cognizable in a habeas corpus proceeding.

Petitioner, finally, claims that he was denied state and federal constitutional rights to effective counsel where his trial counsel failed to (1) insure that Petitioner was informed of the nature of the charges brought against him in the information; (2) move for a mistrial after it came to his attention that jurors might be aware that Petitioner was shackled; (3) investigate the specifics of the plea deal the prosecutor offered to Petitioner's co-defendant in change for his testimony; and (4) object to Petitioner's ability to pay restitution and court costs during the period of Petitioner's incarceration due to his indigency.

The Michigan Court of Appeals has reviewed and rejected this claim stating:

Because no *Ginther* hearing has been held on the four claims of ineffective counsel raised in defendant's pro per brief, our review of the claims is limited to errors apparent on the record. *Horn*, 279 Mich App at 38.

Defendant asserts that defense counsel was ineffective for failing to ensure that he was informed of the nature of the charges brought against him in the information. The basis of the claim is that defendant was never arraigned on the information and did not waive arraignment. However, as previously established, defendant's right to an arraignment on the information was eliminated. Accordingly, defense counsel's failure to ensure that defendant was arraigned on the information did not fall below objective standards of reasonableness. *Uphaus (On Remand)*, 278 Mich App at 185.

Defendant asserts that defense counsel was ineffective for failing to move for a mistrial when defendant brought it to his attention that some jurors might be aware that he was in shackles. However, as previously explained, nothing in the record indicates that any juror was aware of defendant's shackles. Accordingly, defendant has failed to establish the factual predicate of the claim. *Hoag*, 460 Mich at 6.

Defendant also claims that defense counsel was ineffective because counsel never made a "formal objection or argument" to the prosecutor's request that he be shackled during trial. However, because the trial court was aware of the circumstances under which it could order defendant to be shackled and found that one of those circumstances existed, and because defendant has not identified any objection or argument that defense counsel should have made, defendant has not shown that counsel's performance fell below objective standards of reasonableness. *Uphaus (On Remand)*, 278 Mich App at 185.

Defendant argues that defense counsel was ineffective for failing to investigate the specifics of Sawyer's plea agreement. According to defendant, had counsel investigated the plea agreement, he would have learned that the agreement included the dismissal of drug charges in an unrelated case. However, as previously explained, nothing in the record establishes that the dismissal of any drug charge was included in Sawyer's plea agreement. Accordingly, defendant has failed to establish the factual predicate of the claim. *Hoag*, 460 Mich at 6.

Defendant claims that defense counsel was ineffective for failing to object, based on his inability to pay, to the trial court's order requiring him to pay fees, costs, and restitution. However, as previously established, defendant, at sentencing, was not entitled to an assessment of his ability to pay. Accordingly, any objection by defense counsel would have been meritless. Counsel is not ineffective for failing to make a futile motion. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Michigan Court of Appeals Opinion, PageID.34-35, ECF No. 1.

The highly deferential standards for reviewing claims of ineffective counsel in a habeas proceeding have been set forth above. Each of the issues that Petitioner raises in his final ineffective assistance of counsel are either without merit or non-cognizable. Therefore, the rejection of Petitioner's claim by the Michigan Court of Appeals was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.

Accordingly, the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the court will deny Petitioner a certificate of appealability as to each claim raised.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated:      6/14/2016               /s/ R. Allan Edgar
                                    R. ALLAN EDGAR
                                    UNITED STATES DISTRICT JUDGE

31